**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CLINT W. CAMPBELL, | Case No. 1:20-cv-164 |
| Plaintiff, | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER[1]

Plaintiff Randall Cook filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, the ALJ's finding of non-disability is REVERSED, because it is not supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In September 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date a year earlier, on September 15, 2015. (Tr. 175-76). In August 2018, Plaintiff filed an additional application for Supplemental Security Income ("SSI"), alleging the same onset date. Plaintiff alleges disability based upon "severe stomach issues", knee and back pain including "two bulging disk[s]", a shoulder injury,

---

[1]The parties have consented to disposition of this case by the undersigned. *See* 28 U.S.C. § 636(c).

1

hemorrhoids, IBS and depression. (Tr. 203; *see also* Tr. 191, 196). Plaintiff remained insured, for purposes of DIB, through March 31, 2020. (Tr. 17).

Plaintiff's applications were denied initially and upon reconsideration, leading him to request an evidentiary hearing. On November 14, 2018, Plaintiff appeared with counsel and gave testimony before Administrative Law Judge ("ALJ") William Diggs; a vocational expert also testified. (Tr. 33-67). Plaintiff was 36 years old on the alleged disability onset date and remained a "younger individual" at the time of the ALJ's January 24, 2019 adverse decision. (Tr. 12-32). He lives with his parents and his two young children (ages 6 and 7), for whom he is the primary caregiver. (Tr. 43, testifying that he takes care of the children but that his parents help out at times).

At the hearing, Plaintiff asserted disability based in part upon Plaintiff's right ankle, depression and anxiety, and panic attacks. (Tr. 37). However, through counsel Plaintiff stressed that his "biggest problem" is his IBS and bleeding hemorrhoids. (*See* Tr. 37 (counsel's opening statement that this is a "sustainability" case because "he just spends too much time in the restroom."); *see also* Tr. 46, Plaintiff's testimony that he spends 2 to 3 hours in the bathroom on average, but may be spend up from 4 to 8 hours at one time). Plaintiff testified that he has suffered from IBS since the fifth grade. He testified that worsening symptoms led to the onset of disability in September 2015 when he had to report to the hospital after completing his last work shift. (Tr. 47). Although discharge instructions suggested a return to work days later, (Tr. 318), he did not return because he was unable to find a job after reporting on his "rapid situation" and need for bathroom breaks. Plaintiff testified that he cannot predict when he will need to go to the bathroom. (Tr. 46-47). He testified that "one day I can be there… two or three times a day or [sic] and not go for a week. Then a whole week I'm there every day." (*Id.*; *see also* Plaintiff's

2

affirmative answer to query that he "might go a week without even having to use the bathroom?")

In his January 24, 2019 decision, the ALJ determined that Plaintiff has the following severe impairments: irritable bowel syndrome ("IBS"), hemorrhoids, GERD, and a depressive disorder. (Tr. 17). In addition, the ALJ found non-severe impairments of tension headaches, right ankle status post-surgery, shoulder and lumbar spine pain, and left knee pain. (Tr. 18-19). Plaintiff does not dispute the ALJ's determination that none of his impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

There is no dispute that Plaintiff is unable to perform any of his past work in ground maintenance or as a medical warehouse worker or mold maker. (Tr. 30). However, the ALJ rejected any particular findings relating to bathroom breaks and concluded that Plaintiff's IBS symptoms did not preclude all work. Rather, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work with the following non-exertional limitations:

> [H]e can climb ramps and stairs frequently and he can climb ladders, ropes, and scaffolds occasionally. He can frequently balance, stoop, kneel, and crouch, but he is only able to crawl occasionally. He must avoid all exposure to work hazards, such as dangerous machinery and unprotected heights. He is limited to simple, routine tasks in an environment with no fast-paced strict production demands. He can have occasional contact with supervisors, co-workers, and the public. He can have occasional changes in work setting explained in advance.

(Tr. 21). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative unskilled jobs of weight tester, laminator, or hand mounter. (Tr. 31). Therefore, the ALJ determined that

3

Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff argues that the ALJ erred: (1) by giving little weight to the opinions of his primary care physician and only some weight to the opinion of his treating gastroenterologist; (2) by determining that Plaintiff's subjective complaints were not credible; and (3) by improperly focusing on Plaintiff's daily activities. The Court finds reversible error in the analysis of the treating physicians' opinions, and concludes that this case must be remanded both for reconsideration of the opinion evidence and for reevaluation of Plaintiff's subjective complaints. For the convenience of the Court, the Court has combined Plaintiff's second and third claims in the discussion below.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole.

4

*Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. Evaluation of Medical Opinions**

Plaintiff argues that the ALJ erred when he rejected the RFC opinions of two treating physicians. Specifically, Plaintiff argues that the ALJ should have accepted their opinions that his IBS would require him to take unscheduled bathroom breaks each day, and miss at least 4 days of work each month. If accepted, those limitations arguably would preclude Plaintiff from engaging in unskilled full-time work. I agree that the ALJ committed reversible error by failing to provide good reasons to reject the opinions of two treating physicians that Plaintiff requires unscheduled bathroom breaks and will miss work at least 4 days each month. However, based upon ambiguities in the record, remand for further development of the record is the more appropriate remedy than an immediate award of benefits.

Plaintiff established care with Dr. Fuchs, his primary care physician, on July 29, 2016 after his alleged onset of disability. On November 1, 2017, Dr. Fuchs completed a physical RFC form in which she indicated that she had seen Plaintiff 11 times. (Tr. 400). Dr Fuchs opined that Plaintiff had a "poor" prognosis, can sit, stand/walk for "less than 2 hours" in an eight hour day, and would need 1 to 3 unscheduled bathroom breaks for 2-3 hours at a time per day. (Tr. 402). She assessed that he had no limits walking unless he just had a BM, but then could walk only 20 feet. She also indicated that he would have "good days and bad days," and that all of the limitations were "dependent on his abdominal pain and gastrointestinal disease" but that he would miss more than four days of work each month on average. (Tr. 404).

6

After emphasizing that social security regulations required him to give "controlling weight" to the opinion of a treating physician only "when supported by objective medical evidence and consistent with other substantial evidence of record," the ALJ gave Dr. Fuchs' RFC opinions "little weight." (Tr. 28, emphasis original). The ALJ explained his reasons as follows:

> Dr. Fuchs' limitations are somewhat extreme considering the conservative treatment, diagnostic test results, and the claimant's reported symptoms. For example, the December 6, 2016 upper GI endoscopy revealed changes in the esophagus suspicious for eosinophilic esophagitis …., but the examination of the stomach was otherwise normal. Patchy mild erythema was noted in the duodenal bulb, the second portion of the duodenum appeared normal…. The final diagnosis of a gastric biopsy was mild chronic inactive gastritis, no evidence of Helicobacter forms, and no evidence of malignancy. The esophageal biopsies showed mild to moderate chronic esophagitis with features of reflux; occasional intra-epithelial eosinophils noted; no evidence of intestinal metaplasia, dysplasia, or malignancy…. Further, the treatment notes …in the GI Clinic on August 21, 2018 for follow up of gastroesophageal reflux disease and irritable bowel syndrome showed that the claimant's reflux symptoms were currently well controlled….The claimant denied any dysphagia. He reported that he continued to have problems with abdominal cramping after bowel movements. Following bowel movements he noticed cramping localized to the lower quadrants and suprapubic region and also difficulty in micturition which lasted for several minutes. He reported that he often has to strain for nearly 15 minutes to relieve the cramping and that often when he notices lower abdominal cramping, passing urine relieved his symptoms. He denies any bloating, abdominal distention, nausea, or vomiting. His medications were Docusate 2 tablets daily and omeprazole… Abdominal examination was soft, nontender, non-distended, no organomegaly or palpable masses, normoactive bowel sounds.

(Tr. 28-29).

The ALJ never directly stated whether he believed that Dr. Fuchs' and Dr. Sagi's opinions were not entitled to controlling weight because he found them to be unsupported, or because he found them to be inconsistent with other substantial evidence of record. However, the quoted explanation implies that the ALJ believed that normal diagnostic tests and findings undermine Dr. Fuchs' RFC opinions that Plaintiff would require either

7

unscheduled bathroom breaks or miss significant work time based on "bad" IBS days when his symptoms are more pronounced. The ALJ also seemed to focus on Plaintiff's *reflux* being well-controlled, while ignoring the fact that records reflect no similar success with the management of his IBS symptoms.

The ALJ's explanation does not satisfy the "good reasons" standard, in part because there appears to be no inconsistency between Plaintiff's IBS diagnosis, the need for frequent and unscheduled bathroom breaks, and the extensively discussed test results. The condition of IBS is diagnosed based on history, subjectively reported symptoms, and exam. *See generally* https://www.niddk.nih.gov/health-information/digestive-diseases/irritable-bowel-syndrome/diagnosis (accessed on 12/23/20). Additional tests are often used to rule out other causes for the symptoms. There is no dispute that Plaintiff's history, symptoms, exams and test results all confirm his severe and chronic IBS. At the same time, the ALJ did not cite to, and the Court has not found, any evidence in the record to suggest that the need for unscheduled bathroom breaks can be corroborated by test results.

The ALJ also cited to Plaintiff's "conservative treatment" as a basis for discounting Plaintiff's subjective symptoms as well as the RFC opinions. But what the ALJ calls "conservative treatment" - the use of medications and dietary modifications – appears to be standard treatment for IBS. Plaintiff testified, consistent with the record, that he has attempted many prescribed treatments without relief. He has sought treatment both from his primary care physician and from a specialist throughout the claimed disability period. The ALJ did not cite to any medical opinions and there is nothing in the administrative record that would suggest that some form of more aggressive treatment exists for IBS that Plaintiff's treating physicians have not yet tried. According to information published

8

by the National Institutes of Health, there appears to be little other treatment available than the type of medication and dietary changes that have been prescribed. https://www.niddk.nih.gov/health-information/digestive-diseases/irritable-bowel-syndrome/treatment.

The ALJ's analysis of the treating gastroenterologist's RFC opinions suffers from the same defects. Dr. Sagi established care in October 2016 and saw plaintiff biannually for his IBS and GERD. (Tr. 612). On November 12, 2018, Dr. Sagi completed a physical RFC report in which he states that Plaintiff suffers from "abdominal pain/cramping 4-5 times a week lasting 2-8 hours per episode." (Tr. 612). Dr. Sagi opined that Plaintiff would require unscheduled bathroom breaks between 0 and 2 times per day. (Tr. 614). He stated that Plaintiff "may be unable to give notice" depending on the urgency. (*Id.*) He opined that Plaintiff could stand/walk for only about 2 hours, and sit for about 4 hours. (Tr. 613). He also opined that Plaintiff would miss about four days per month. (Tr. 615). With respect to exertional limitations, he opined that Plaintiff could frequently lift up to 10 pounds and occasionally lift 20 pounds.

Despite recognizing his status as a treating specialist, the ALJ gave Dr. Sagi's assessment only "some weight." (Tr. 29). The ALJ again erred by focusing on the lack of "diagnostic test results" and allegedly conservative treatment to discount Plaintiff's otherwise consistent reports to his treating physician of extreme symptoms.

> Dr. Sagi relied on the claimant's complaints despite diagnostic test results that were overall within normal limits. Dr. Sagi did not change the claimant's medication, he did not report that the claimant had not [sic] lost weight to the point of concern, and he saw the claimant for regularly scheduled appointments.

(Tr. 29).

9

Dr. Sagi's records reflect that Plaintiff reported that he was spending hours in the bathroom in 2016, and continually experienced IBS symptoms. Because prior treatments were not successful, Dr. Sagi suggested new treatment options in February 2018 including cognitive behavioral therapy and new medical management options; Plaintiff chose to start with a trial of Dicyclomine. (Tr. 24). At a follow-up appointment in August 2018, Plaintiff's chief complaint was extreme stomach pain when going to the bathroom, mostly constipation with some diarrhea and cramping. He again reported worsening symptoms. Dr. Sagi did not further change Plaintiff's medication (which had been twice changed) but formulated a plan for a significant additional testing to rule out other possible causes for Plaintiff's continuing distress. At that time, multiple medications already had been tried with successful resolution of Plaintiff's GERD, but without success as to the allegedly worsening IBS.

With conditions like IBS, a physician must rely in part upon the patient's reports when completing an RFC assessment. That fact alone is not necessarily grounds for disregarding a treating physician's opinions, particularly if the opinions are well-supported by the diagnosis and other substantial evidence in the record. Considering the lack of good reasons provided by the ALJ to disregard two treating physician's opinions that unscheduled bathroom breaks would be required as an accommodation for Plaintiff's severe and chronic IBS symptoms, reversal and remand for further development of the record is required. *See Mershad v. Com'r of Soc. Sec.*, 2016 WL 659307 at *12 (S.D. Ohio Feb. 18, 2016), adopted at 2016 WL 1222351 (S.D. Ohio Mar. 24, 2016) (reversing based upon the ALJ's failure to include or recognize Plaintiff's need for "unscheduled, frequent, and lengthy trips to the restroom" in his RFC finding despite severe IBS).

10

On the other hand, to the extent that Plaintiff challenges the ALJ's evaluation of other opinion evidence, the Court finds no error. The ALJ gave "little weight" to the agency consultants after pointing out that they "did not consider the effects of the claimant's symptoms of IBS or hemorrhoids in their analysis, and gave a restriction for medium exertional limitations." (Tr. 27). Likewise, the weight given to the assessment of a physical consultative evaluator, Dr. Gatton, is also substantially supported. (*See id.*, explaining that Dr. Gatton's opinion is "vague, but …somewhat consistent with sedentary limitations," and is not fully adopted based on the "very limited physical for stomach issues" and one-time evaluation.).

**2. The Evaluation of Plaintiff's Subjective Complaints**

Plaintiff claims additional error in the ALJ's rejection of his subjective complaints. In particular, Plaintiff asserts that the ALJ overly relied upon Plaintiff's daily activities as a basis for rejecting his testimony that his IBS and hemorrhoids require him to spend hours in the bathroom on unscheduled breaks. If Plaintiff's testimony were fully accepted, he would be disabled from being able to sustain full-time work. Apart from the fact that remand is already required based upon error in the evaluation of the treating physicians' opinions, the evaluation of Plaintiff's subjective complaints presents a close issue, mainly because of the wide discretion afforded to ALJs on what traditionally has been termed the "credibility" analysis, more recently redefined as a "consistency" analysis in SSR 16-3p.

In enacting SSR 16-3p, the Agency removed the word "credibility" from a prior rule (SSR 96-7p), and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). SSR 16-3p emphasizes that "our adjudicators will not assess

11

an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. The elimination of the word "credibility" in the revised rule can be semantically awkward since virtually all of the prior case law uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

A reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). It remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ provided several reasons for discrediting Plaintiff's subjective reports for needing unscheduled bathroom breaks during the day, as well as his reports that he often spends hours in the bathroom at one time.

> The frequency and severity of the claimant's gastrointestinal complaints is not supported by diagnostic tests and physical examinations. The claimant is treated conservatively for his physical and mental complaints and he completes significant activities of daily living.

(Tr. 30).

As discussed above, diagnostic tests, physical examinations, and allegedly "conservative" treatment are not sufficient reasons to discount Plaintiff's subjectively reported IBS symptoms in the absence of evidence that the severity of those symptoms can be "supported by" tests or examination, or that more aggressive treatment was available. (*See e.g.*, Tr. 22-23). Plaintiff's subjective reports are consistent with his reports to his treating physicians. (*See, e.g.*, Tr. 384, reporting on 10/18/20 to GI Clinic that he spends 2-6 hours in bathroom for bowel movements, with significant cramping; Tr. 527-528, reporting on 2/5/28 to GI Clinic that he has continuing cramping after bowel movements for 2 to 3 hours; *see also* Tr. 348, 351-352, 397-398, 604, 606). Plaintiff's hearing testimony also is consistent with the third-party reports of his parents. *(See* Tr. 242, third-party function report stating a need for 4-6 hour bathroom breaks; Tr. 191). Because the ALJ assumed that the number or duration of bathroom breaks caused by severe IBS can be supported or corroborated through objective tests, and further assumed without evidence that more aggressive IBS treatment exists beyond that which had been prescribed, it is likely that those assumptions colored his analysis of Plaintiff's subjective complaints. Therefore, a redetermination of the consistency of Plaintiff's reported need for bathroom breaks and other subjectively reported symptoms should be made on remand.

Still, other reasons for discounting Plaintiff's subjective complaints are better supported. For example, several of the physical ailments on which Plaintiff based his disability claim were found to be non-severe. The ALJ also commented on Plaintiff's

13

wide-ranging daily activities, and accurately summarized the record in this regard. Plaintiff testified that he lies in bed and "very rarely" takes his kids to a park or goes out because he is "scared of being caught out." (Tr. 51; Tr. 22). However, the ALJ pointed out that "the evidence showed that he completes significant activities of daily living, including shopping, driving, and recently going to a concert with friends." (Tr. 20). Plaintiff also reported doing some of the laundry. (*Id.*, Tr. 223). He does grocery shopping and walks through the store. He cut the grass with a riding mower 2-3 times per year and raked leaves. (*Id.*; *see also* Tr. 370). He reads magazines or newspaper articles. He wakes up his young children and gets them ready for school and works on his car "every once in a while." (Tr. 25, 221, 371). He enjoys reading news online or spending time on Facebook and does not usually nap. He looks at his children's' papers and plays with them after school. He usually makes dinner and may watch cartoons with his children, helps with their school work, bathes them and/or reads to them in the evening. (Tr. 25, 221, 244).

     Plaintiff argues that the ALJ's focus on his wide-ranging activities misses the mark, because he does not deny that he can engage in activities at times, but only that he cannot sustain full-time work, 40 hours per week, without missing work time due to unscheduled bathroom breaks on the job or flare-ups of his symptoms. In other words, Plaintiff argues that he can engage in his activities only because of his flexible schedule, including living with his parents (who are able to provide childcare at times). Although the ALJ discounted their reports as biased, Plaintiff's parents completed third party reports that generally supported his account of spending hours in the bathroom. (Tr. 191-198, 242-249). Plaintiff testified that his symptoms and associated bleeding hemorrhoids have progressively worsened over decades, culminating in his inability to work in 2015. He

14

testified that one medication helped alleviate his IBS symptoms, but had been taken off the market 15 years prior, with no relief from other medications or dietary changes.[2]

In response to Plaintiff's argument, the Commissioner maintains that the ALJ "did not cite to Plaintiff's activities to show that he could perform them on a sustained basis," but instead cited to the activities "to show his level of functioning" throughout the claimed period of disability. (Doc. 10 at 13). That may be true, but the ALJ's seemingly heavy reliance upon objective test results, physical examination findings and conservative treatment as evidence that he could sustain full-time work is not adequately supported in the present record. *See Malone v. Com'r of Soc. Sec.,* 2017 WL 8676559 (S.D. Ohio Dec. 12, 2017), adopted at 2018 WL 1521768 (S.D. Ohio Mar 28, 2018) (remanding based upon separate error in evaluation of opinion evidence, but encouraging reconsideration of subjective complaints that frequent urination had increased over time).

### III. Conclusion and Order

Although the ALJ committed reversible error, this is not a case in which the Plaintiff has established his entitlement to benefits. Plaintiff alleges a disability onset date beginning in September 2015 based upon an increase in the severity of IBS symptoms that he reportedly had experienced for decades. However, significant medical records relating to GI complaints only begin to appear *after* the alleged onset of disability, in 2016. Remand is required primarily due to the lack of "good reasons" for rejecting the opinions of two treating physicians and the ALJ's failure to adequately explain the lack of inclusion of any accommodation for unscheduled bathroom breaks based upon the record

---

[2] The record reflects that Plaintiff had been prescribed Zelnorm. (Tr. 343). Zelnorm had been taken off the market for a period of time, but was reintroduced with FDA approval in early 2019 according to its manufacturer. *See* https://www.myzelnorm.com/about-zelnorm/faqs.html, accessed on 12/22/20.

presented and the well-supported finding that Plaintiff's IBS is a severe impairment. Although the ALJ is directed to reconsider Plaintiff's subjective complaints on remand, the Court recognizes the wide discretion afforded to the Commissioner under SSR 16-3p.

In sum, this case is remanded pursuant to sentence four of § 405(g) for further proceedings. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

For the reasons explained herein, Defendant's decision is **REVERSED** and **REMANDED** under sentence four and this case is **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge